IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROBERT M. BROWN, JR.,

        Plaintiff,

v.                                    Civil Action No. 2:04CV62

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,
              Defendant.

## REPORT AND RECOMMENDATION

## I. Introduction

A.    Background

    Plaintiff, Robert M. Brown, Jr., (Claimant), filed his Complaint on August 24, 2004 seeking

Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner

of Social Security, (Commissioner).[1]  Commissioner filed her Answer on October 26, 2004.[2]

Claimant filed his Motion for Summary Judgment and Brief in Support Thereof on December 28,

2004.[3]  Commissioner filed her Motion for Summary Judgment and Brief in Support Thereof on

January 3, 2005.[4]  Claimant filed his Response to Commissioner's Motion for Summary Judgment

on January 18, 2005.[5]  Commissioner filed her Reply to Claimant's Motion for Summary Judgment

---

[1] Docket No. 1.

[2] Docket No. 6.

[3] Docket Nos. 10 and 11.

[4] Docket Nos. 12 and 13.

[5] Docket No. 15.

and Reply Brief on January 27, 2005.[6]  Claimant filed his Response to Defendant's reply Brief on

February 3, 2005.[7]  Commissioner filed her Supplemental Memorandum in Response to Claimant's

Motion for Summary Judgement on February 15, 2005.[8]   Claimant filed his Reply to

Commissioner's Supplemental Memorandum on February 23, 2005.[9]

B.    The Pleadings

　　　1.    Claimant's Motion for Summary Judgment and Brief in Support Thereof.

　　　2.    Commissioner's Motion for Summary Judgment and Brief in Support
　　　　　　Thereof.

　　　3.    Claimant's Response to Commissioner's Motion for Summary Judgment.

　　　4.    Commissioner's Reply to Claimant's Motion for Summary Judgment and
　　　　　　Reply Brief.

　　　5.    Claimant's Response to Defendant's reply Brief.

　　　6.    Commissioner's Supplemental Memorandum in Response to Claimant's
　　　　　　Motion for Summary Judgement.

　　　7.    Claimant's Reply to Commissioner's Supplemental Memorandum.

C.    Recommendation

　　　1.    I recommend that Claimant's Motion for Summary Judgment be DENIED

and Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was

---

[6] Docket No. 16.

[7] Docket No. 18.

[8] Docket No. 19.

[9] Docket No. 20.

substantially justified in his decision.  Specifically, the ALJ properly determined Claimant's RFC.

Also, the ALJ properly included the final RFC in the hypothetical posed to the VE.  In addition, the

ALJ properly assessed the medical opinions of record.  Also, the ALJ included all of Claimant's

mental limitations in the hypothetical posed to the VE.  Lastly, no conflict exists between the VE's

testimony and the DOT.

## II.  Facts

A.    Procedural History

On July 9, 2002 Claimant filed for Disability Insurance Benefits (DIB) alleging disability

since September 11, 2002.  The application was denied initially and on reconsideration.  A hearing

was held on May 6, 2003 before an ALJ.  The ALJ's decision dated August 6, 2003 denied the claim

finding Claimant not disabled within the meaning of the Act.  The Appeals Council denied

Claimant's request for review of the ALJ's decision on July 21, 2004.  This action was filed and

proceeded as set forth above.

B.    Personal History

Claimant was 52 years old on the date of the May 6, 2003 hearing before the ALJ.  Claimant

has a high school education and past relevant work experience as a maintenance worker,

maintenance technician, and rehabilitation aide.

C.    Medical History

The following medical history is relevant to the time period during which the ALJ

concluded that Claimant was not under a disability September 11, 2002 - August 6, 2003:

**Clarksburg VAMC**
**J. Meyers Powell. J.R., M.D. 1/23/03 Tr. 132**
•      Axis I: Dsythymia.
•      GAF 45.

**Clarksburg VAMC**
**James A. Arnett, M.D. 10/15/02 Tr. 135**
- Reports doing well.
- Axis I: Dsythymia.
- GAF 45.

**Clarksburg VAMC**
**Drew Brady, M.D. 10/15/02 Tr. 136**
- Ankle sprain.

**Orthopedics Consult**
**Paul Gause, M.D. 9/17/02 Tr. 138**
- Inversion injury to left ankle following fall from a ladder.

**Pittsburgh Healthcare System**
**David Wolfe 9/13/02 Tr. 141**
- Severe right ankle sprain.

**Radiology Report**
**Frank A. Mino, Radiologist 9/14/02 Tr. 143**
- Left Foot and ankle x-rays.
- No significant osseous, articular or soft tissue abnormalities.

**Clarksburg VAMC**
**John A. Lucci, M.D. 8/29/02 Tr. 151**
- Chronic lower back pain secondary to degenerative disc disease.
- Chronic bilateral sacroilitis.

**Clarksburg VAMC**
**8/7/02 Tr. 154**
- Assessment of pain: chronic. Frequency: steady. Quality: sharp.

**Clarksburg VAMC**
**J. Meyers Powell. J.R., M.D. 7/8/02 Tr. 155**
- Axis I: Dysthymia.
- GAF 45.

**Clarksburg VAMC**
**Edgardo F. Sarino, M.D. 7/3/02 Tr. 156**
- Mild degenerative disc disease change of the lumbosacral spine. Healed splenic granulomata are noted.
- Minor abnormality.

**Clarksburg VAMC**
**J. Meyers Powell. J.R., M.D. 4/12/02 Tr. 160**
• Axis I: Dsythymia.

**Clarksburg VAMC**
**Harold Scott PA-C 2/8/02 Tr. 165**
• Left hand pain secondary to trauma.

**Clarksburg VAMC**
**J. Meyers Powell. J.R., M.D. 2/8/02 Tr. 167**
• Axis I: Dsythymia.

**Clarksburg VAMC**
**Brian J. McCool, M.D. 1/16/02 Tr. 168**
• Leukoplakia of the right buccal mucosa.
• Laryngeal reflux.

**Clarksburg VAMC**
**1/15/02 Tr. 169**
• Axis I: dysthymia.
• Axis II: no diagnosis.
• Axis III: cervical and left arm pain. R/O cervical disc problem.

**Clarksburg VAMC**
**Janelle S. Hineman 12/28/01 Tr. 171**
• Diagnosis: cervical strain vs. cervical pathology.

**Clarksburg VAMC**
**Jack C. Clark Sr. 12/6/01 Tr. 172**
• Impression: shoulder x-ray normal.

**Clarksburg VAMC**
**J. Meyers Powell. J.R., M.D. 10/16/01 Tr. 176**
• Axis I: dysthymia.

**Clarksburg VAMC**
**M. Omar, M.D. 8/10/01 Tr. 180**
• Bronchial asthma.

**Clarksburg VAMC**
**Paul Hessler 4/5/01 Tr. 183**
• Impression: disc bulging at L3-4 and L4-5 without signs of nerve root impingement.

**Clarksburg VAMC**

**K. Kaufmann, PA 3/27/01 Tr. 185**
•     Lower back pain with radicular pain, gerd, esophagitis with delayed gastric emptying.

**Clarksburg VAMC**
**Paul Hessler 3/23/01 Tr. 187**
•     Small sliding hiatus hernia with mild distal peptic esophagitis.
•     There may be gastroparesis.

**Clarksburg VAMC**
**Stanley B. Schmidt, M.D. 1/22/01 Tr. 191**
•     Holter monitoring normal.

**Clarksburg VAMC**
**Paul Hessley 3/1/01 Tr. 193**
•     Gallbladder normal.

**Clarksburg VAMA**
**Collyer Kelling 1/16/01 Tr. 194**
•     Does not demonstrate active disease.
•     Minor Abnormality.

**Pittsburgh Healthcare Systems**
**John A. Perri, M.D. 3/21/00 Tr. 197**
•     X-rays of knees show no deformity.
•     May be some minimal narrowing of the medial joint line.

**Pittsburgh Healthcare Systems**
**John A. Perri, M.D. 12/21/99 Tr. 199**
•     No effusion.
•     No varus or valgus deformity.

**Pittsburgh Healthcare Systems**
**Ernest Manders, M.D. 12/17/99 Tr. 200**
•     Patient is doing well and stitches will be removed in two weeks.

**Pittsburgh Healthcare Systems**
**Pavel Mourachov, M.D. 12/3/99 Tr. 202**
•     Right superficial peroneal neuroma.

**Pittsburgh Healthcare Systems**
**John A. Perri, M.D. 10/19/99 Tr. 203**
•     X-rays of the knee were reviewed of the tibia and fibula and no gross abnormalities are noted.

**Physical Residual Functional Capacity Assessment**
**Linda (ineligible) 8/23/02 Tr. 205 - 211**
- Exertional limitations: Occasionally 20 lbs., frequently 10 lbs., stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
- Postural limitations: All occasionally.
- Manipulative limitations: None.
- Visual limitations: None.
- Communicative limitations: None.
- Environmental limitations: Avoid concentrated exposure to extreme heat, extreme cold, and hazards. All others unlimited.

**Psychiatric Review Technique**
**Samuel Goofs, Ph. D. 9/3/02 Tr. 212**
- Impairment(s) not severe.
- Affective disorder.
- Anxiety-related disorder.
- "B" Criteria: Mild restrictions on activities of daily living, maintaining social function, and with maintaining concentration. No restriction on decompensation.
- "C" Criteria: Evidence does not establish the presence of "C" criteria.

**Physical Residual Functional Capacity Assessment**
**11/25/02 Tr. 226-233**
- Exertional limitations: Occasionally 50 lbs., frequently 25 lbs., stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
- Communicative limitations: None.
- Environmental limitations: Avoid concentrated exposure to extreme heat and extreme cold. All others unlimited.
- Postural limitations: All frequently.
- Manipulative limitations: None.
- Visual limitations: None.

**Clarksburg VAMC**
**J. Meyers Powell. J.R., M.D. 5/1/03 Tr. 240**
- Axis I: Major depression, dysthymia, panic disorder with agoraphobic, obsessive-compulsive disorder, PTSD (chronic).

**Clarksburg VAMC**
**J. Meyers Powell. J.R., M.D. 4/23/03 Tr. 242**
- Axis I: Dysthymia

**Clarksburg VAMC**
**James A. Arnett, M.D. 1/27/03 - 4/2/03 Tr. 243 - 249**
- Impression: type 2 diabetes, patient does not have hypertension, has full motion in his left ankle.

**Clarksburg VAMC**
**2/4/03 Tr. 260**
•       Assessment of pain: chronic. Frequency: steady. Quality: sharp, throbbing.

**Clarksburg VAMC**
**James A. Arnett, M.D. 1/27/03 Tr. 261**
•       Impression: calcific focus is identified in left lobe. Periventricular leukomalacia likely
      related to small white matter ischemia.

**Clarksburg VAMC**
**James A. Arnett, M.D. 1/27/03 Tr. 262**
•       Impression: there were no problems with this exam.

**Narayan Clinic**
**N.B. Chandran, M.D. 7/8/02 Tr 263**
•       Assessment: chronic back pain and arthritis.

**Sharon Joseph, Ph.D. 5/30/03 Tr. 266 - 269**
•       Axis I: major depression, recurrent, moderate; panic disorder with agoraphobia; post-
      traumatic stress disorder, per medical record.
•       Axis II: borderline intellectual functioning.
•       Axis III: diabetes mellitus, seizure disorder, degenerative joint disease, low back pain,
      asthma, arthritis, hypertension, per claimant's report.

**Sharon Joseph, Ph.D. 6/18/03 Tr. 270-271**
•       Patients concentration is moderately impaired. Judgement and recent memory are mildly
      impaired.
•       Major depression, panic disorder, and PTSD.

**West Virginia Disability Determination Service**
**Kip Beard, M.D. 6/10/03 Tr. 276**
•       Impression: diabetes mellitus type II, asthma, seizure disorder, chronic back pain, chronic
      arthralgias, status post right lower leg nerve surgery with residual neuropathic pain,
      headaches, "roaring and sizzling in the head."

D.     <u>Testimonial Evidence</u>

<u>1. Claimant</u>

Testimony was taken at the hearing from Claimant, who testified as follows (Tr. 314-16,

320-24):

Q        How often do you have pain?

A        All the time.

Q        What kind of pain do you have, sharp?

A        It's sharp.  It stays there and I can only sit for so long.  I have to stand up for a while and then I have to go lay down and curl up.  I can't lay on my back at all.  I can't be straight on my back.  I have to be in a curling position.

*                    *                    *

Q        Okay.  Do you have any problems with your neck?

A        It just gets stiff sometimes and all that.

Q        All right.  Do you have to get off of your feet during the day?

A        Yes, I do.

Q        What do you do?  You sit down or lay down?

A        Usually, I curl up on the couch.  I'll stay there for a while.  I'll get in the recliner and that hurts my back after a while.  I get up.  I'll go stand in the kitchen and lean against the kitchen cabinet and then I'll go lay down in the bed for a while.

Q        Now do you have - - do you also have problems with your knees?

A        Yeah.  My knees are totally - - because of the heavy lifting that I did during work time they're about shot. I can't - - if I - - I can't carry anything because it puts weight against my knees and then I can't - - whatever it - - I can't walk.

Q        Okay.

A        I'm not supposed to walk up steps, banks or carry heavy - - anything heavy.

Q        Do you notice that when you're standing or walking, does that increase the pain,

help the pain - -

A   If I carry anything, it increases the pain to my knees.

Q   Okay.  What about walking?  Does that - -

A   I don't walk very far because I've got this stumble problem and my left leg will give out sometimes.

Q   Let me ask you about - - does walking - - does that affect your knees?  Does that make your knees hurt?

A   Yeah.

*     *     *

Q   Let me - - I'm going to switch.  You were also having seizures?

A   Um-hum.

Q   Now how long has this been going on?

A   I didn't let anybody know.  They started in early June.

Q   Of last year?

A   This year.

Q   You're talking about 2002, last summer?

A   Yeah.

Q   Okay.

A   2002.

Q   Okay.  And how often - - you're now being treated for seizures and taking medication?

A   Yes.

Q      How often are you now having these episodes?

A      I had one - - let's see, today's Tuesday.  Friday.

Q      Okay.

A      Well, at night.

Q      How many times say in a week or in a month do you have these episodes?

A      It all depends.

Q      Can you give me an average?

A      I might have maybe two a week.

Q      Do you sometimes go a week and not have any?

A      Yeah.  I don't know when they're coming on.  They just - -

Q      You sometimes have more than two in a week?

A      I've had sometimes had one in the daytime and sometimes at night I'll be - -

Q      Can you tell me - - I was going to ask you can you describe these episodes?

A      I shake and I get all sweaty and I get - - I might urinate and - -

Q      Do you lose consciousness?

A      No.  My eyes roll in the back of my head and I just go out of it.  I see 3D and everything, you know, and I just - - like, if I was - - I don't know.  I just - -

Q      And - -

A      I just go sort of numb-like.

Q      Has your wife seen you have these episodes?

A      Yes.

Q      Okay.

A	So has my nephew and a few friends.

Q	Now how long does it take you to recover or to get back to normal after you have one of these?

A	To me it's like a few seconds but it's really like four or five minutes.

Q	Okay. After four or five minutes, do you feel completely back to normal?

A	No. I go lay down.

Q	Okay. That's what I'm asking you. How - - the entire process - -

A	I can't - - I don't try to do anything, you know, after one hour. I just go lay down because I'm still kind of weak and stumbly.

Q	Do you feel confused?

A	I don't know where I'm at half the time.

*		*		*

Q	Do you have a noise that you hear in your head since these seizures?

A	Yeah. I 've got a roaring, pitching, sizzling sound in my head and it won't go away. It's 24/7 unless I'm sleeping and as soon as I wake up, it's - - I'm hearing it now. It starts - - it just starts all over.

Q	Is that frustrating to you and aggravating?

A	Well, how would you feel if you heard noise in your head all day long? Yes, it's frustrating. That's what I told the doctor.

Q	Now do you feel like you're getting anxious, worried and nervous?

A	I get - - yeah.

Q	Do you feel like you're getting depressed?

A       I get - - yeah.  I'm depressed most of the time.

### 2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 333-34):

Q       Please assume an individual approaching advanced age with a high school education, precluded from performing all but light work with a sit/stand option, no hazards such as machinery and heights, no - - I mean controlled environment, free of excessive dusts, fumes, pollutants, work that is no climbing and unskilled low stress, defined as one and two step processes, routine and repetitive tasks, primarily working with things rather than people entry level.  The hypothetical, light, sit/stand, no hazards, controlled environment, no climbing, low stress.  With those limitations, can you describe any work this hypothetical individual can perform?

A       Under the light exertional level, price marker, 115,000 nationally, 11,000 regionally, hand packer, 196,000 nationally, 19, 000 regionally and because of the listing including no hazards and no pollutants we would reduce those numbers in half, Your Honor.

Q       Are those jobs consistent with the DOT?

A       Yes, they are, Your Honor, except the sit/stand option.  The DOT does not describe jobs as sit or stand option and that's based upon my experience in placing individuals in these positions.

ALJ          The Claimant testified he lies down four or five times a day.  How much did you say, Mr. Brown, approximately each time?  Can you just tell me - -

CLMT         Sometimes 30, sometimes an hour.

BY ADMINISTRATIVE LAW JUDGE:

Q       Okay, for 30 minutes to an hour each time.  Does that limitation rule out those jobs you just named?

A       If in fact, Your Honor, the individual had to lie down three to four times during a regular workday 30 to 40 minutes, it would rule out all those jobs, Your Honor.

Q       Okay.  If Mr. Brown's concentration due to depression and anxiety was impacted to where he could not stay on task 1/3 to 2/3 of the day, are those jobs affected?

A       Yes, they would be, Your Honor.  They would not be available.

E.       Lifestyle Evidence

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records.  The information is included in the report to demonstrate how the Claimant's alleged impairments affect his daily life.

•       Claimant is 5' 3" tall and weighs 172 pounds.  (Tr. 308).

•       Smokes cigars.  (Tr. 309).

•       Has a history of drinking.  (Tr. 309-10).

•       Socializes with friends and family.  (Tr. 327).

•       Goes food shopping with wife.  (Tr. 326-27).

## II.  The Motions for Summary Judgment

A.       Contentions of the Parties

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the ALJ improperly determined Claimant's RFC.  Also, Claimant maintains that the ALJ failed to include the final RFC in the hypothetical posed to the VE.  In

addition, Claimant argues that the ALJ failed to properly assess the medical opinions of record. Also, Claimant contends that the ALJ failed to include all of Claimant's mental limitations in the hypothetical posed to the VE. Lastly, Claimant argues that a conflict exists between the VE's testimony and the DOT.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ properly determined Claimant's RFC. Also, Commissioner asserts that the ALJ properly included the final RFC in the hypothetical posed to the VE. In addition, Commissioner contends that the ALJ properly assessed the medical opinions of record. Also, Commissioner argues that the ALJ included all of Claimant's mental limitations in the hypothetical posed to the VE. Lastly, Commissioner maintains that no conflict exists between the VE's testimony and the DOT.

B.      The Standards.

1.      Summary Judgment.    Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec.  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v.  Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2. _Judicial Review_.  Only a final determination of the Commissioner may receive judicial review.  See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3. _Social Security - Medically Determinable Impairment - Burden_. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy.  42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4. _Social Security - Medically Determinable Impairment_.  The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques.  42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5. _Disability Prior to Expiration of Insured Status- Burden_.  In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status.  Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

6. _Social Security - Standard of Review_.  It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence.  The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary.  Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

7. _Social Security - Scope of Review - Weight Given to Relevant Evidence_.  The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry."  Milburn

Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

8. Social Security - Substantial Evidence - Defined. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9. Social Security - Sequential Analysis. To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

10. Social Security - Treating Physician - Controlling Weight - The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2). See also Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984); Heckler v. Campbell, 461 U.S. 458, 461 (1983); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990).

C.    Discussion

## 1.  Light work

Claimant asserts that the ALJ miscategorized Claimant's Residual Functional Capacity (RFC) as light work with the ability to sit or stand all day instead of sedentary work.  Commissioner counters that the ALJ properly determined Claimant's RFC.

The ALJ determined that Claimant has the RFC "to perform the demands of light work with certain modifications.  He must be allowed to sit or stand at will during the workday.  He can perform no climbing.  He must avoid hazards, such as dangerous or moving machinery and he must work in a controlled environment.  He is limited to unskilled, low stress, entry-level work that involves one-to two-step work processes and routine, repetitive tasks, primarily working with things rather than people."  (Tr. 26).

Claimant argues that "where a claimant must have the option to sit for the entire eight-hour workday, that claimant would not be able to perform the basic requirements of 'light work'.  On the other hand, such a claimant might be able to perform the requirements of 'sedentary work'." (Plaintiff's Motion for Summary Judgment p. 8).  "Light work involved lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds.  Even though the weight lifted may be very little, *a job is in this category when it requires a good deal of walking or standing, **or** when it involves sitting most of the time with some pushing and pulling of arm or leg controls*."  20 C.F.R. § 404.1567(b) (emphasis added).  Claimant's argument lacks merit.  A sit/stand option does not preclude light work because light work involves either a good deal of walking or standing **or** sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. § 404.1567(b).  Therefore, the ALJ did not err when he determined that Claimant has the RFC to

perform the demands of light work with certain modifications.

## 2. Hypothetical

Claimant maintains that the ALJ failed to include the final RFC in the hypothetical posed to the Vocational Expert (VE). Commissioner counters that the ALJ included the final RFC in the hypothetical posed to the VE.

The ALJ determined that Claimant retains the RFC "to perform the demands of light work with certain modifications. *He must be allowed to sit or stand at will during the workday.* He can perform no climbing. He must avoid hazards, such as dangerous or moving machinery and he must work in a controlled environment. He is limited to unskilled, low stress, entry-level work that involves one-to two-step work processes and routine, repetitive tasks, primarily working with things rather than people." (Tr. 26) (emphasis added). The hypothetical posed to the VE was the following "[p]lease assume an individual approaching advanced age with a high school education, precluded from performing all but light work *with a sit/stand option*, no hazards such as machinery and heights, no - - I mean controlled environment, free of excessive dusts, fumes, pollutants, work that is no climbing and unskilled low stress, defined as one and two step processes, routine and repetitive tasks, primarily working with things rather than people entry level. The hypothetical, light, *sit/stand*, no hazards, controlled environment, no climbing, low stress. With those limitations, can you describe any work this hypothetical individual can perform?" (Tr. 333) (emphasis added).

Claimant argues that allowing to sit or stand at will during the workday is totally different then allowing a sit/stand option. Claimant cites nothing to support his contention that a sit/stand option is not the ability to sit or stand at will. On the other hand, Commissioner cites a case that defines a sit/stand option as the ability to change positions at will. "Some individuals must, due to

their impairments, go regularly from a seated to a standing position and vice versa.  If the need to change positions cannot be 'accommodated by scheduled breaks and a lunch period,' SSR 96-9p, the person needs a so-called 'sit/stand option.' i.e. the ability to change positions essentially at will." Alexander v. Barnhart, 287 F. Supp. 2d 944, 949 n.6 (E.D. Wis. 2003).  Therefore, the ALJ properly included Claimant's RFC in the hypothetical posed to the VE.

### 3.  Treating Physician

Claimant asserts that the ALJ failed to properly evaluate Claimant's treating physician Dr. Arnett.  Commissioner counters that the ALJ properly evaluated Dr. Arnett's opinion.

The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record.  20 C.F.R. § 416.927(d)(2).  See also Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984); Heckler v. Campbell, 461 U.S. 458, 461 (1983); Throckmorton v.  U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir.  1990).

Dr. Arnett opined that Claimant would need to be able to sit for eight hours and stand/walk for two hours in an eight hour day according to Dr. Arnett's best estimate.  The ALJ agreed "with Dr. Arnett that the claimant would need to change position during the workday and would therefore need a job where he could sit or stand at will."  (Tr. 23).  As discussed above that sit/stand limitation was properly incorporated into Claimant's RFC and the hypothetical posed to the VE.  Dr. Arnett also opined that Claimant will probably be an unreliable worker predominantly due to his seizure disorder. However, although the claimant reported a history of possible seizures beginning in June 2002, he was not evaluated until December 2002.  Claimant "was referred for an awake and asleep electroencephalogram, with this study, performed on January 27, 2003, interpreted as normal.  A[n]

MRI scan of the brain performed on February 20, 2003 was also interpreted an normal. When seen for a neurological examination of April 15, 2003 the claimant reported having approximately three seizures per month while on his medication, Dilantin 100mg tid." (Tr. 21). During the hearing Claimant testified that he was having approximately two seizures a week. (Tr. 19, 321). Also, Claimant testified that since his medication was increased he had one seizure. (Tr. 19, 323). The ALJ considered Claimant's inconsistent statements regarding the frequency of his seizures, that an increase in medication decreased the frequency, and that Claimant did not start treatment until December 2002. The ALJ concluded that " the claimant has failed to establish that any unreliability associated with his seizures will last for a continuous period of at least 12 consecutive months after he started receiving treatment." (Tr. 23). Therefore, the ALJ properly evaluated Dr. Arnett's opinion.

### 4. Treating Psychiatrist

Claimant maintains that the ALJ erred to properly evaluate Claimant's treating psychiatrist Dr. Powell's opinion. Commissioner counters that the ALJ properly evaluated Dr. Powell's opinion.

The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2). See also Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984); Heckler v. Campbell, 461 U.S. 458, 461 (1983); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990).

Dr. Powell diagnosed Claimant with dysthmia, obsessive compulsive disorder, a GAF

score of 45, major depression, recurrent; panic disorder with agoraphobia, and post traumatic stress disorder. (Tr. 155, 167, 132, 240). Dr. Powell's opinions "are not supported by any detailed findings on mental status examination or other testing". (Tr. 23). Also, Dr. Powell's opinions are inconsistent with other substantial evidence in the case record. On May 30, 2003 Dr. Joseph reported that Claimant had a full scale IQ score of 74 which falls in the range of borderline intellectual functioning, no suicidal ideation, no perceptual or thinking disturbances relative to the presence of hallucinations or delusions, no preoccupations, obsessions, or compulsions, no psychomotor disturbances, affect was flat, insight fair, judgment mildly impaired, concentration moderately impaired, immediate memory within normal limits, recent memory mildly impaired, remote memory within normal limits. (Tr. 266-71). Dr. Arnett opined that Claimant can perform a limited range of light work. (Tr. 23, 234-39). Therefore, the ALJ afforded proper weight to Dr. Powell's opinion.

Claimant argues that the ALJ "gave no mention of the weight, if any at all, he offered the treating psychiatrist, despite the clear requirement that he do so." (Plaintiff's Motion for Summary Judgment p. 17). However, the ALJ stated "I further find that controlling weight cannot be given to the medical assessment of the claimant's mental abilities submitted by Dr. Powell on May 1, 2003 (Exhibit 5G)." (Tr. 23). The ALJ then discussed that Dr. Powell's opinion was "not supported by any detailed findings on mental status examination or other testing and are inconsistent with the detailed findings reported by Dr. Joseph." (Tr. 23). Therefore, the ALJ properly evaluated Dr. Powell's opinion.

### 5. Mental Limitations

Claimant argues that the ALJ failed to include any actual mental limitations in his RFC,

and erred by basing the hypothetical on categories of work rather then actual limitations. Commissioner counters that the ALJ included all of Claimant's limitations in the hypothetical posed to the VE.

Claimant asserts that the ALJ should have included the mental limitations diagnosed by Dr. Powell and Dr. Joseph. As discussed above Dr. Powell's opinion was properly not afforded controlling weight. Dr. Joseph diagnosed Claimant with major depression, recurrent, moderate, panic disorder with agoraphobia, posttraumatic stress disorder, per medical record, and borderline intellectual functioning. (Tr. 269). The ALJ relied on Dr. Joseph's diagnoses and determined that Claimant has "recurrent major depression; panic disorder with agoraphobia; posttraumatic stress disorder; obsessive compulsive disorder; and borderline intellectual functioning." (Tr. 26). Accordingly, the ALJ limited Claimant's RFC to "light work with certain modifications. He must be allowed to sit or stand at will during the workday. He can perform no climbing. He must avoid hazards, such as dangerous or moving machinery and he must work in a controlled environment. He is limited to unskilled, low stress, entry-level work that involves one-to two-step work processes and routine, repetitive tasks, primarily working with things rather than people." (Tr. 26).

The hypothetical posed to the VE was the following "[p]lease assume an individual approaching advanced age with a high school education, precluded from performing all but light work with a sit/stand option, no hazards such as machinery and heights, no - - I mean controlled environment, free of excessive dusts, fumes, pollutants, work that is no climbing and unskilled low stress, defined as one and two step processes, routine and repetitive tasks, primarily working with things rather than people entry level. The hypothetical, light, sit/stand, no hazards,

controlled environment, no climbing, low stress. With those limitations, can you describe any work this hypothetical individual can perform?" (Tr. 333). Claimant argues that ALJ when "[i]nstead of presenting [claimant's] limitations to the VE, the ALJ made his own vocational decision that [claimant] could perform within certain categories of work, leaving the VE to simply recite the job[] titles that [] fit within the categories of work given by the ALJ." (Plaintiff's Motion for Summary Judgment p. 12). Claimant cites two cases to support his argument <u>Burns v. Barnhart</u>, 312 F.3d 113 (3rd Cir. 2002) and <u>Elswick v. Apfel</u>, 109 F. Supp. 2d 476 (S.D.W. Va. 2000). Claimant's argument is misplaced. <u>Burns v. Barhnart</u> involved a case where the Claimant was sent to a psychological evaluation after the hearing, i.e. after the ALJ posed his hypothetical to the VE. In this case the ALJ had all the evidence of record and formulated his RFC and hypothetical questions based on that evidence. (Tr. 23-25). In <u>Elswick v. Apfel</u> the ALJ failed to include sleepiness caused by Claimant's medications and that Claimant had difficulties in concentration, persistence and pace. These cases do not stand for the proposition that the ALJ has to detail Claimant's actual diagnoses to the VE instead of accommodating Claimant's impairments into categories of work. These cases support the notion that the hypothetical posed to the VE has to accommodate Claimant's limitations. As discussed above, the ALJ posed a proper hypothetical to the VE based on Claimant's RFC.

### 6. Dictionary of Occupational Titles

Claimant maintains that the ALJ erred by failing to resolve the conflicts between the VE's testimony and the Dictionary of Occupational Titled (DOT). Commissioner counters that the ALJ that no conflict exists between the VE's testimony and the DOT.

The VE testified that someone with Claimant's limitations could perform the jobs of price

marker and hand packer.  Claimant argues that Claimant's RFC is not consistent with the job of price marker because of the sit/stand option.  As discussed above the ALJ properly accounted for the sit/stand limitation in Claimant's RFC and in the hypothetical to the VE.  Claimant also asserts that the job of price marker "requires the worker to 'carry out detailed but uninvolved written or oral instruction.'" which Claimant argues is "clearly inconsistent with the RFC finding of the ALJ."  (Plaintiff's Motion for Summary Judgment p. 18).  Claimant does not provide a citation at the end of his quote and does not show where he got this information.  The undersigned can only assume that it was obtained from the previously cited DOT 209.587-034, however the undersigned does not see that language in DOT 209.587-034.  In addition, Claimant does not explain how requiring a worker to carry out detailed but uninvolved written or oral instructions is clearly inconsistent with the RFC finding of the ALJ.  Therefore, the job of price marker is a job that Claimant can perform.

Claimant also argues that the job of hand packer is medium unskilled work and not light unskilled work in contradiction with Claimant's RFC.  The job of hand packager appears in the DOT 920.587-018 and requires medium strength.  However, the job description also states that hand packing could be done in any industry.  In other industries there are light strength hand packing jobs.  For example in the garment industry there is a light strength hand packager job listed under DOT 789.687-066.  Therefore, the job of hand packager is also a job that Claimant can perform.  Based on the Above, no conflict exists between the VE's testimony and the DOT.

## IV. Recommendation

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be DENIED and Commissioner's Motion for Summary Judgment be GRANTED because the ALJ

was substantially justified in his decision.  Specifically, the ALJ properly determined Claimant's RFC.  Also, the ALJ properly included the final RFC in the hypothetical posed to the VE.  In addition, the ALJ properly assessed the medical opinions of record.  Also, the ALJ included all of Claimant's mental limitations in the hypothetical posed to the VE.  Lastly, no conflict exists between the VE's testimony and the DOT.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.   A copy of such objections should be submitted to the District Court Judge of Record.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to parties who appear *pro se* and any counsel of record, as applicable.

DATED: June 10, 2005

/s/ James E. Seibert

JAMES E.  SEIBERT
UNITED STATES MAGISTRATE JUDGE