# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ROBERT M. BROWN,**

     Plaintiff,

    v.                            **Civil Action No.: 2:04-CV-62 (MAXWELL)**

**MICHAEL J. ASTRUE[1],**
**COMMISSIONER OF SOCIAL SECURITY,**

     Defendant.

## ORDER

The Plaintiff, Robert M. Brown, instituted the above-styled action in this Court on August 24, 2004, seeking judicial review of an adverse decision by the Defendant, the Commissioner of the Social Security Administration, pursuant to 42 U.S.C. § 405(g).

The Answer Of The Federal Defendant was filed on October 26, 2004, and, by Order entered November 3, 2004, the Court instructed the parties to file their cross motions for summary judgment, in accordance with the deadlines established by Local Rule of Procedure 83.12.

The Plaintiff's Motion For Summary Judgment and Brief In Support thereof were filed on December 28, 2004, and the Defendant's Motion For Summary Judgment and Brief In Support thereof were filed on January 3, 2005. The Plaintiff's Response To Defendant's Motion For Summary Judgment was filed on January 18, 2005. Defendant filed his Reply To Plaintiff's Motion For Summary Judgment And Reply Brief on January 27, 2005. On February 3, 2005,

---

[1] Michael J. Astrue became the Commissioner of Social Security, effective February 12. 2007, to succeed Jo Anne B. Barnhart. Under Fed.R.Civ.P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

Plaintiff filed Plaintiff's Response To Defendant's Reply Brief. On February 15, 2005, Defendant filed Defendant's Supplemental Memorandum In Response to Plaintiff's Motion For Summary Judgment. Plaintiff filed his Reply to Defendant's Supplemental Memorandum on February 23, 2005.

By Order entered January 14, 2005, the Court referred the cross-motions for summary judgment to United States Magistrate Judge James E. Seibert, pursuant to 28 U.S.C. § 636(b)(1)(B); Rule 72 of the Federal Rules of Civil Procedure; and Rule 7.02(c) of the Local Rules of Civil Procedure, with directions to consider the same and to submit to the Court proposed findings of fact and a recommendation for disposition.

On June 10, 2005, Magistrate Judge Seibert filed his Report And Recommendation, wherein he recommended that the Plaintiff's Motion For Summary Judgment be denied and the Defendant's Motion For Summary Judgment be granted. Specifically, Magistrate Judge Seibert found that the Administrative Law Judge properly determined Plaintiff's Residual Functional Capacity; that the Administrative Law Judge properly included the final Residual Functional Capacity in the hypothetical posed to the Vocational Expert; that the Administrative Law Judge properly assessed the medical opinions of record; that the Administrative Law Judge included all of Plaintiff's mental limitations in the hypothetical posed to the Vocational Expert; and that no conflict existed between the Vocational Expert's testimony and the Dictionary of Occupational Titles.

Magistrate Judge Seibert's Report And Recommendation expressly directed the parties, in accordance with 28 U.S.C. § 636(b)(1) and Rule 6(e) of the Federal Rules of Civil Procedure, to file any written objections thereto with the Clerk of the Court within ten (10) days after being served with a copy of said Report And Recommendation. Said Report And Recommendation

further advised the parties that a failure to timely file objections would result in waiver of the right to appeal from a judgment of this Court based thereon.

On June 20, 2005, Plaintiff filed an Objection To Report And Recommendation. In his Objection, Plaintiff objected to the Magistrate Judge's findings regarding light work; the Magistrate Judge's findings regarding the hypothetical posed to the Vocational Expert; the Magistrate Judge's finding regarding the treating physician and psychiatrist; the Magistrate Judge's finding regarding mental limitations; and the Magistrate Judge's findings regarding the Dictionary of Occupational Titles.

After reviewing Magistrate Judge Seibert's Report And Recommendation; Plaintiff's Objection To Report And Recommendation; and the entire record in this matter, this Court remanded this action to Magistrate Judge Seibert for further consideration of the issues raised by Plaintiff in his Objection.

On February 9, 2006, Magistrate Judge Seibert filed Per Remand Memorandum, Opinion, and Report And Recommendation Social Security. Magistrate Judge Seibert again found that the Administrative Law Judge properly included Plaintiff's RFC in the hypothetical posed to the VE; that the Administrative Law Judge's hypothetical appropriately included relevant considerations supported by the record; that the Administrative Law Judge properly evaluated the opinions of Plaintiff's physicians; that the Administrative Law Judge properly determined Plaintiff's RFC and posed a proper hypothetical question to the Vocational Expert; and that since there was no inconsistency between the VE's testimony and the listings in the DOT, the Administrative Law Judge was under no duty to resolve any conflict.

Magistrate Judge Seibert's second Report And Recommendation also expressly directed the parties, in accordance with 28 U.S.C. § 636(b)(1) and Rule 6(e) of the Federal Rules of Civil

Procedure, to file any written objections thereto with the Clerk of Court within ten (10) days after being served with a copy of said Report And Recommendation. Said Report And Recommendation further advised the parties that a failure to timely file objections would result in waiver of the right to appeal from a judgment of this Court based thereon.

On February 23, 2006, a Second Objection To The Magistrate's Proposed Findings Of Fact And Recommendation For Disposition was filed by Plaintiff. In his Objection, Plaintiff objected to the Magistrate Judge's findings that the Administrative Law Judge properly presented Plaintiff's RFC and hypothetical; the Magistrate Judge's findings regarding Plaintiff's treating physician and psychiatrist; the Magistrate Judge's findings that the Administrative Law Judge properly considered Plaintiff's mental limitations; and the Magistrate Judge's finding that there was no inconsistency between the VE testimony and the Dictionary of Occupational Titles. Defendant filed his Response To Plaintiff's Objections To The Report And Recommendation Of The Magistrate Judge on February 27, 2006.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the Magistrate Judge's findings to which an objection is made. After reviewing Magistrate Judge Seibert's Report And Recommendation and the entire record in this matter, this Court believes that, for the following reasons, it is appropriate to reject the Magistrate Judge's Report And Recommendation and to find that Plaintiff's is disabled at step five of the sequential evaluation process based on the opinion of Plaintiff's treating psychiatrist and based on the associated Vocational Expert testimony.[2]

---

[2] The sequential evaluation process is a series of five "steps" that we follow in a set order. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

4

I.    **The Administrative Law Judge Erred Because He Did Not Include All Of The Limitations Contained In The Residual Functional Capacity Finding In His Hypothetical Question To The Vocational Expert.**

Plaintiff has first argued that the ALJ should have found him disabled pursuant to the Medical Vocational Guidelines given the limitations contained in the Residual Functional Capacity (hereinafter RFC) finding in the decision. As a second and separate argument, Plaintiff has argued that the ALJ did not present a proper hypothetical question to the Vocational Expert (hereinafter VE) at the hearing, which contained all of the limitations in the RFC finding. The Court will combine these two arguments for the purpose of this decision.

Plaintiff has strongly argued in his numerous briefs that the RFC finding in the ALJ's decision contained additional limitations that where never included in the hypothetical questions presented to the VE. After reviewing the Magistrate's Reports and Recommendations, the arguments of counsel and the entire record, the Court finds that Plaintiff's argument is correct.

> "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."
>
> Hines v. Barnhart, 453 F.3d 559, 566 (4th Cir. 2006) (*citing* Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989).

> In his decision, the ALJ found the following RFC,
>
> The Claimant has the following residual functional capacity: he is able to perform the demands of light work with certain modifications. He must be allowed to sit or stand at will during the workday. He can perform no climbing. He must avoid hazards, such as dangerous or moving machinery and he must work in a controlled environment. He is limited to unskilled, low stress, entry-level work that involves one-to two-step work processes and routine, repetitive tasks, primarily working with things rather than people. (Tr. 26).

The hypothetical most closely resembling the RFC finding read,

> Please assume an individual approaching advanced age with a high school education, precluded from performing all but light work with a sit/stand option, no hazards such as machinery and heights, no – I mean controlled environment, free of excessive dusts, fumes, pollutants, work that is no climbing and unskilled low stress, defined as one and two step processes, routine and repetitive tasks, primarily working with things rather than people entry level. The hypothetical, light, sit/stand, no hazards, controlled environment, no climbing, low stress. With those limitations, can you describe any work this hypothetical individual can perform? (Tr. 333).

Plaintiff has argued that there is a critical difference between a "sit/stand option" and the need to "sit or stand at will." The Commissioner himself stated, "[i]t should be noted that in his hypothetical question, the ALJ limited Plaintiff to a 'sit/stand option' but then stated, in his written decision, that Plaintiff had the RFC to 'sit or stand at will.'" (Doc. 12 at 12). Thus, it is clear that the language the ALJ included in the RFC regarding the need to "sit or stand at will during the workday" was not the same as the language he used in the hypothetical question presented to the VE indicating a need for a "sit/stand option." The Court notes that the ALJs decision refers to Plaintiff's need to "sit or stand at will" in three separate instances but does not similarly reference a "sit/stand option." (Tr. 23, 23-24, 26).

The Commissioner has argued that the phrases "sit/stand option" and "sit or stand at will" are simply interchangeable, thus, there is no error here. Plaintiff has consistently argued that a "sit/stand option" refers to a claimant's need to periodically change positions for a short period of time and does not permit a claimant to choose to remain in one position for as long as he wishes. The Court is not convinced that these phrases are interchangeable and tends to agree with Plaintiff's contention that the need to "sit or stand at will" indicates that Plaintiff must have the option to sit at his sole discretion for an entire eight hour workday or, conversely, stand for

6

the entire workday.  If so, such a requirement places Plaintiff into the sedentary category of work.

> Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday.

Social Security Ruling 96-9p.

When addressing the treating physician's opinion, the ALJ indicated that he concurred with Dr. Arnett's opinion that Plaintiff could perform a range of "light work" and would "need a job where he could sit or stand at will." (Tr. 23).  The ALJ, however, has misrepresented Dr. Arnett's opinion.  Dr. Arnett did not state that Plaintiff could perform a range of "light work." Rather, Dr. Arnett gave no opinion regarding what category of work Plaintiff could perform.  He did opine that Plaintiff could sit for eight hours during a workday but could only stand/walk for one to two hours during a workday and lift up to twenty pounds occasionally.  (Tr. 234).  These limitations are quite similar to the sitting and standing requirements contained in the Commissioner's definition of sedentary work described above.  The Commissioner has never argued that Plaintiff could perform any light jobs if he needed the ability to sit for the entire eight-hour workday.

Social Security Ruling 96-9p contains the most direct guidance on this issue.  This Ruling focuses on the need to alternate or change positions.  It does not indicate that a claimant's need to remain in the position of his choice for an entire workday would be accommodated by a sit/stand option.

> Alternate sitting and standing: An individual may need to *alternate* the required sitting of sedentary work by standing (and, possibly, walking) *periodically*. Where this need cannot be accommodated by scheduled breaks and a lunch

period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to *alternate* sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to *alternate* sitting and standing.

Social Security Ruling 96-9p (*emphasis added*).

Despite the clear language of this Ruling, the Commissioner argues,

The frequency and duration of the sit/stand option implicitly is an indefinite period of time, i.e., Plaintiff can either sit or stand as often as he would like and for however long he would like. In other words, if the ALJ had intended to place a frequency/durational limitation to the sit/stand option, he would have provided such a limitation in his hypothetical question. (Doc. 27 at 2).

Thus, the Commissioner's statement seems to concede Plaintiff's longstanding argument that the RFC contained in the decision allows the Plaintiff to sit for as long as he wishes at his sole discretion. Although conceding Plaintiff's argument, Commissioner's assertions are contrary to the clear language of SSR 06-9p requiring the RFC to specifically indicate the frequency of the need to alternate sitting and standing.

In his second Report and Recommendation, the Magistrate accepts the Commissioner's argument that the two phrases are interchangeable as demonstrated by the following passage:

The Court in Alexander v. Barnhart, 287 F. Supp. 2d 944, 949 n.6 (E.D. Wis. 2003), stated that "[s]ome individuals must, due to their impairments, go regularly from a seated to a standing position and vice versa. If the need to change positions cannot be 'accommodated by scheduled breaks and a lunch period,' SSR 96-9p, the person needs a so-called 'sit/stand option,' i.e., the ability to change positions at will." Therefore, the Undersigned finds that the ALJ properly included Claimant's RFC in the hypothetical posed to the VE. (Doc. 24 at 3).

As Plaintiff previously argued, the Alexander case discusses a claimant's ability to *change positions* at will not a claimant's need to choose a position and remain in that one position. If the Court found that these two phrases were simply interchangeable, then the

8

Magistrate's position would be correct. However, the Court is not prepared to make that assumption.

The Commissioner also cites the cases of <u>Walls v. Barnhart</u>, 296 F.3d 287 (4th Cir. 2002) and <u>Books v. Chater</u>, 91 F.3d 972 (7th Cir. 1996) to support his position that the two phrases are interchangeable. Neither case, however, goes so far. In <u>Walls</u>, the Court upheld the Commissioner's denial of benefits, where "it is clear that the VE knew he was responding to the ALJ's instruction to provide for no prolonged walking or standing and allow for a sit/stand option at the claimant's discretion." <u>Id.</u>, at 291. Books contains the following line: "Thus, Book's employment opportunities were limited to those light jobs where he would have the option to change his position between sitting and standing at will – i.e., light work with a sit/stand option." <u>Id.</u>, at 976. <u>Books</u> focused on the need to change positions at will not the need to remain in one position. Furthermore, the two cases set forth by the Commissioner are distinguishable from the case at bar, because, in each, the ALJ presented the more restrictive language to the VE. In each case, while the RFC contained in the written decision said "sit/stand option," the ALJ specifically asked the VE about the need to "sit or stand at will." In this case, however, the opposite is true. Here, the ALJ offered the VE the less restrictive "sit/stand option," while his final RFC contained the need to "sit or stand at will." This VE never did have the opportunity to consider the more restrictive limitation. As such, it is not clear that the VE knew he was responding to the ALJ's instruction to allow for either sitting or standing for up to an entire eight hour workday. In the case at bar, the Court declines to speculate whether the different language would have made a difference in the VE's testimony.

In conclusion, it is clear that the language contained in the RFC finding was not the same as the language contained in the hypothetical question to the VE. The Court is not convinced

that these phrases are interchangeable. The Court will not now assume that there are other jobs available that Plaintiff can perform given the limitations contained in the RFC finding. At step five of the sequential evaluation process, the Court notes that it is the Commissioner who bears the evidentiary burden of proving that there are other jobs available that Plaintiff can perform. Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). The ALJ erred because he did not present a proper hypothetical to the VE containing all of Plaintiff's limitations contained in the RFC as required by law. The Court finds that remand of this case to the Commissioner would be appropriate so that a proper hypothetical question containing the language found in the RFC can be presented to a VE. However, given the Court's decision below, remand is rendered moot.

## II.     The Administrative Law Judge Erred Because He Improperly Rejected The Opinion Of Plaintiff's Treating Physician, James M. Powell, Jr., M.D.

Plaintiff argues that the ALJ improperly rejected the opinions of both of his treating physicians, James A. Arnett, M.D. and James M. Powell, Jr., M.D. (Doc. 10 at 15). The Commissioner argues that the ALJ properly did not give "controlling weight" to the treating physicians' opinions. (Doc. 12 at 13). The Court will first address the opinion of Plaintiff's treating psychiatrist, Dr. Powell, because the Court's decision regarding Dr. Powell's opinion renders consideration of Dr. Arnett's opinion moot.

> The ALJ was obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant."

> Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (*citations omitted*).

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic

techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling SSR 96-2p.

The Court must determine whether the ALJ's decision not to give Dr. Powell's opinion controlling weight, or any weight, was supported by substantial evidence. First, the Court notes that Dr. Powell is Plaintiff's treating psychiatrist and did give a medical opinion regarding Plaintiff's mental residual functional capacity. (Tr. 237). It is apparent from the record that Dr. Powell's opinion, if accepted, renders Plaintiff disabled. The ALJ acknowledged,

> On cross-examination, the vocational expert was asked by the claimant's representative to assume that the claimant had the mental limitations detailed by Dr. Powell in the assessment form dated May 1, 2003. The vocational expert responded that these limitations would preclude the performance of any jobs on a sustained basis. The undersigned does not accept this response to be accurate because the hypothetical factors upon which it is based are considered to be a material exaggeration of the substantial evidence of record.[3] (Tr. 25).

As stated above, the Commissioner argues that the ALJ properly did not give "controlling weight" to Dr. Powell's opinion. Controlling weight, however, is not the sole issue here. As Plaintiff correctly argues, it is difficult to determine what weight, if any, the ALJ gave Dr. Powell's opinion. In regard to Dr. Powell's opinion, the ALJ stated,

> I further find that controlling weight cannot be given to the medical assessment of the claimant's mental ability submitted by Dr. Powell on May 1, 2003. This assessment and his earlier rating of the claimant's Global Assessment of Functioning at 40, or a major impairment according to the DIAGNOSTIC AND

---

[3] Dr. Powell's May 1, 2003 assessment was part of the administrative record before the ALJ and was evidence in this case. If the representative's question to the VE contained the limitations set forth in Dr. Powell's assessment, which the ALJ admitted it did, that question could not have been a material exaggeration of the evidence of record. The ALJ admitted that the question came directly from the evidence of record, i.e. exhibit 5F. The ALJ ultimately determined that Dr. Powell's opinion was not entitled to controlling weight but that did not mean the opinion was no longer a piece of evidence in the case.

STATISTICAL MANUAL OF MENTAL DISORDERS, Fourth Edition, page 32 or page 34 in the Revised Text (DSM-IV), are not supported by any detailed findings on mental status examination or other testing and are inconsistent with the detailed findings reported by Dr. Joseph. As detailed above, the longitudinal record establishes that the claimant's mental impairments were controlled with prescribed medication during much of the period in question. Further, Dr. Powell made his additional diagnoses on May 1, 2003, based almost entirely on the claimant's subjective complaints and additional history. He has clearly failed to establish a basis for finding that the claimant has no useful ability to function in the majority of the areas rated. I find that the overall record supports the assessment submitted by Dr. Joseph on June 18, 2003. (Tr. 23).

Given the RFC finding and given the ALJ's comments regarding the representative's question to the VE, it appears that the ALJ outright rejected Dr. Powell's opinion because the RFC finding does not contain any of the limitations addressed by the treating psychiatrist. (Tr. 26). SSR 96-2p makes clear that a treating physician's opinion may still be entitled to the "greatest weight" and possibly "adopted," even though such opinion was not entitled to controlling weight. Thus, the analysis of Dr. Powell's opinion did not end with the decision on controlling weight.

There seems to be no disagreement in this case that Dr. Powell had examined Plaintiff, that Dr. Powell had a treatment relationship with Plaintiff and, that, as a treating psychiatrist, Dr. Powell was specialist. It appears that the disagreement lies in the supportability of Dr. Powell's opinion and in the consistency of his opinion with the record.

The Court cannot agree that Dr. Powell's opinion was not supported by a fair reading of the record. The ALJ stated that Dr. Powell's assessment was not supported by detailed findings on mental status examination or other testing. (Tr. 23). The ALJ appears to have selectively cited to only portions of Dr. Powell's records and ignored the following notations:

- On January 15, 2002, Dr. Powell noted under the objective portion of this record that "patient is very tense, anxious and states clearly that he does no want to be this way with angry outbursts and 'jumping on people.' He is more depressed than previously and reports

insomnia with early AM awakening and increased irritability." Plaintiff's Prozac was increased, Remeron was started and Klonopin was started. (Tr. 168-169).

- On February 8, 2002, Dr. Powell noted "he relates that he is so tense these days that his anger is 'getting the best of it' exemplified by his hitting his left hand against a door this week while angry." (Tr. 167). Plaintiff was seen for left hand trauma at the VA Hospital on February 8, 2002. (Tr. 165).

- Psychotherapy-Anger Management treatment note dated March 1, 2002 indicated that Plaintiff had "sudden urges of anger with no awareness of lower levels of irritation/annoyance" despite medications. (Tr. 161).

- On April 12, 2002, Dr. Powell noted Plaintiff's need for increased Prozac dosage to help manage OCD. Dr. Powell diagnosed OCD and noted this trait under the objective portion of this record. (Tr. 160-161).

- On July, 19, 2002, Dr. Powell noted that Plaintiff required increased medication for his anxiety level. GAF score of 45. (Tr. 155).

- On January 23, 2003, Dr. Powell noted under the objective portion of this record that Plaintiff "appears under increased stress and more depressed under current levels of stress." GAF score was 45. (Tr. 132).

- On April 23, 2003, Dr. Powell noted under the objective portion of this record "increasingly anxious, worried, and under stress." GAF score was 45. (Tr. 242).

- On May 1, 2003, Dr. Powell noted "additional history obtained today documents patient having repeated panic attacks with agoraphobia including symptoms as follows: palpitations, sweating, S.O.B., chest discomfort, dizziness, trembling, hot flashes, fear of dying, fear of losing control, fear of going crazy. He also reports having compulsive behaviors such as his need to make certain that all furniture is in the right place, ash trays must be empties, dishes have to be done just in a certain way or he must redo them again, the yard grass must be mowed in a certain pattern to reduce his stress level or else he yells and screams. He also describes having memory deterioration, difficulty with concentration which interferes with task completion, and describes a worsening in his depression with increased crying spells and irritability. In addition, he reports having PTSD nightmares and flashbacks." Dr. Powell endorsed the above under the objective portion of this record. GAF score was 40. (Tr. 240).

"The deference accorded an ALJ's findings of fact does not mean that we credit even those findings contradicted by undisputed evidence." Hines, 453 F.3d at 566 (citing Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995) ("An ALJ may not select and discuss only that evidence that favors his ultimate conclusion....."). This is what the ALJ did here. Dr. Powell's records

frequently contained an objective portion where he either listed the objective findings or indicated that the subjective portion of the record was endorsed under the objective portion of the treatment record. Just because the ALJ did not approve of this method does not mean there were no objective findings. "In the absence of any psychiatric or psychological evidence to support his position, the ALJ simply does not possess the competency to substitute his views on the severity of plaintiff's psychiatric problems for that of a trained professional." Grimmett v. Heckler, 607 F.Supp. 502, 503 (S.D. W.Va., 1985) (citing Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974), McLain v. Schweiker, 715 F.2d 866, 869 (4th Cir. 1983)).

Next, the ALJ stated, "… the longitudinal record establishes that the claimant's mental impairments were controlled with prescribed medication during much of the period in question." (Tr. 23). This assertion is simply not supported by the record. On February 8, 2002, Dr. Powell saw Plaintiff and diagnosed him with one mental disorder, dysthymia (Tr. 167). On July 19, 2002, Dr. Powell saw Plaintiff and diagnosed him with two mental disorders (dysthymia and obsessive compulsive disorder (OCD)) and rated his GAF at 45 (Tr. 155). On October 15, 2002, and January 23, 2003, Dr. Powell again rated Plaintiff's GAF at 45 (Tr. 132). On May 1, 2003, Dr. Powell diagnosed Plaintiff with five (5) different mental disorders, including Major Depression, Recurrent; Dysthymia; Panic Disorder with Agoraphobia; OCD; and Post-Traumatic Stress Disorder ("PTSD") (Tr. 240). On this occasion, he rated Plaintiff's GAF at 40 (Id.), suggesting not symptoms that are controlled by medication but some impairments in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.[4] Furthermore, Dr. Powell repeatedly increased medication and added medications due to Plaintiff's increased symptoms.

---

[4] American Psychiatric Assoc., Diagnostic and Statistical Manuel of Mental Disorders, 4th Ed, 32 (1994).

Additionally, the ALJ stated "… Dr. Powell made his additional diagnoses on May 1, 2003, based almost entirely on the claimant's subjective complaints and additional history." (Tr. 23). It is not for the ALJ to determine the proper way to diagnose a mental disorder. In the case of Langley v. Barnhart, 373 F.3d 1116 (10th Cir. 2004) the ALJ rejected a doctor's opinion based on the ALJ's "… own speculative conclusion that the report was based only on the claimant's subjective complaints… ." Id. at 1121. When addressing the ALJ's line of reasoning, the Tenth Circuit Court of Appeals stated "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinions.*" Id. (*emphasis in original*, quoting from McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)).

Lastly, the ALJ determined that Dr. Powell's opinion was "… inconsistent with the detailed findings reported by Dr. Joseph." (Tr. 23). The Court cannot agree. "An 'ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence.'" Hines, 453 F.3d at 564, fn. 2 (*citing* Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). Dr. Joseph's report did not provide such "persuasive contrary evidence." The Court first notes that the ALJ requested Dr. Joseph's evaluation yet only provided her with Plaintiff's mental health treatment records from just two dates. (Tr. 130, 266, 268). Thus, Dr. Joseph could not have been in a better position than Dr. Powell to comment on Plaintiff's limitations. The Court is aware that Dr. Joseph administered IQ and achievement testing. However, such results cannot be considered inconsistent with Dr. Powell's opinion because Dr. Powell was not treating Plaintiff for any IQ related impairments. The Court cannot ignore the fact that, other than the IQ and achievement testing, Dr. Joseph's evaluation relied almost exclusively on Plaintiff's

subjective reports. The ALJ found such reliance impermissible when criticizing Dr. Powell's opinion but overlooked this factor when accepting Dr. Joseph's report. Finally, Dr. Joseph's opinion did not address all of the mental disorders diagnosed by Dr. Powell and found to be severe impairments by the ALJ. (Tr. 269, 26). Dr. Joseph did not address Plaintiff's OCD diagnosis and noted that the PTSD diagnosis in her report was based on Dr. Powell's medical record. (Tr. 269).

In conclusion, the Court finds that the ALJ did not properly consider the opinion of Plaintiff's treating psychiatrist, Dr. Powell, according to the guidelines set forth above. Furthermore, the Court finds that the ALJ's rejection of Dr. Powell's opinion in favor of Dr. Joseph's opinion was not supported by substantial evidence. The Court further finds that the limitations set forth in Dr. Powell's opinion were properly presented the VE, and the VE testimony indicated no jobs existed for an individual with such limitations. Therefore, the Court finds that a remand for additional proceedings is not necessary and finds that Plaintiff is disabled at step five of the sequential evaluation process. The Court's decision regarding Dr. Powell renders Plaintiff's argument concerning Dr. Arnett moot.

III.    **The Administrative Law Judge Erred Because He Did Not Include All Of Plaintiff's Limitations In The Residual Functional Capacity Finding And In The Hypothetical Questions To The Vocational Expert.**

Plaintiff argues that the ALJ's RFC finding and related hypothetical question to the VE was improper because the RFC/hypothetical did not contain Plaintiff's actual mental limitations but, instead, instructed the VE that Plaintiff could work within certain "categories of work." (Doc. 10 at 11-12). The Commissioner argues that the ALJ properly provided for Plaintiff's mental limitations by limiting Plaintiff to the RFC found in the decision. (Doc. 19 at 5-6).

In regard to mental limitations, the RFC finding stated,

> He is limited to unskilled, low stress, entry-level work that involves one-to two-step work processes and routine, repetitive tasks, primarily working with things rather than people. (Tr. 26).

The ALJ presented these factors to the VE at the hearing in a hypothetical question. (Tr. 333).

The VE testified that there were jobs Plaintiff could perform based on the hypothetical question. (Tr. 333).

> "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."

> Hines v. Barnhart, 453 F.3d 559, 566 (4th Cir. 2006) (citing Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989).

> "The RFC assessment is a *function-by-function* assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."

> Social Security Ruling SSR 96-8p (*emphasis added*).

Plaintiff's argument is essentially that the medical evidence confirmed that Plaintiff had specific mental limitations that the ALJ did not present to the VE. Plaintiff argues that instead of presenting the actual mental limitations to the VE, the ALJ made the vocational decision that Plaintiff could work within certain categories of work, thus, reducing the VE's role to simply naming jobs within the categories of work listed by the ALJ. In other words, Plaintiff argues that the type of RFC contained in the ALJ's decision instructs the VE that the claimant can work. The Court agrees.

After the conclusion of the hearing, the ALJ referred Plaintiff for a consultative psychological evaluation with Sharon Joseph, Ph.D.[5] (Tr. 266). Dr. Joseph found that Plaintiff had a full scale IQ of 73 and found Plaintiff's reading ability at the fourth grade level, his spelling at the third grade level and his math at the fourth grade level. (Tr. 267). Dr. Joseph

---

[5] The hearing was held on May 6, 2003. (Tr. 14).

diagnosed Major Depression, recurrent moderate; Panic Disorder with Agoraphobia; Post-traumatic Stress Disorder per medical record; and Borderline Intellectual Functioning. (Tr. 269). On June 18, 2003, Dr. Joseph completed a Medical Source Statement Of Ability To Do Work-Related Activities (Mental) (hereinafter MRFC) indicating that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, interact appropriately with supervisors, interact appropriately with co-workers, and respond appropriately to changes in a routine work setting. (Tr. 270-271). Dr. Joseph found that Plaintiff was markedly limited in his ability to interact appropriately with the public and respond appropriately to work pressures in a usual work setting. (Tr. 271). The ALJ wrote, "I find that the overall record supports the assessment submitted by Dr. Joseph on June 18, 2003." (Tr. 23.)

The case of <u>Burns v. Barnhart</u>, 312 F.3d 113 (3rd Cir. 2002) appears to be directly on point here. In Burns, the ALJ sent the claimant for a psychological evaluation after the conclusion of the hearing. As in this case, the Administration's examining psychologist opined the claimant had a list of particular mental limitations that the ALJ did not present to the VE. <u>See</u> <u>id.</u>, at 121. Instead of presenting the actual mental limitations to the VE, the ALJ presented the phrase "simple repetitive one, two-step tasks" <u>See</u> <u>id.</u>, at 122. Addressing the insufficiency of this hypothetical, the Court stated:

> Here, the ALJ's hypothetical did not refer to any of the type of limitations later outlined in [the evaluating psychologist's] report. Instead, it merely referred to "simple repetitive one, two-step tasks." This phrase, however, does not specifically convey [the claimant's] intellectual limitations referenced in [the evaluating psychologist's] report. Rather, it could refer to a host of physical and mental limitations, such as a person's mechanical or small motor skills, his lack of initiative or creativity, or a fear of, or unwillingness to take on, unfamiliar tasks. While the phrase could encompass a lack of intelligence, it does not necessarily incorporate all of the borderline aspects of [the claimant's] intellectual functioning or the other deficiencies identified in [the evaluating psychologist's] report. For example, it certainly does not incorporate [the evaluating psychologist's] finding that [the claimant] is borderline in the areas of reliability, common sense, ability to

18

function independently, and judgment, or that he manifests flightiness, disassociation, oppositional tendencies, and difficulties in comprehension. As a result, the hypothetical did not include all of the limitations suffered by [the claimant], thus making it deficient. ... The phrase "simple, routine, repetitive work" ... is not sufficiently descriptive of the previously noted deficiencies that [the evaluating psychologist] diagnosed. Because the ALJ based his finding, at step five of the evaluation process, that [the claimant] could perform a significant number of jobs in the national economy on this deficient hypothetical question, we find that it was not based on substantial evidence....

Burns v. Barnhart, 312 F.3d 113, 123 -124 (3rd Cir. 2002).

The Federal District Courts of West Virginia have also addressed this same issue. In the case of Elswick v. Apfel, 109 F.Supp.2d 476 (S.D.W.Va. 2000), the Court was presented with a situation similar to the case at hand. In Elswick, as in this case, the claimant's treating psychologist/psychiatrist presented an assessment of the claimant's mental ability to perform work. This assessment included multiple specific mental limitations. Based on these mental limitations, the ALJ found the claimant would "often have deficiencies of concentration, persistence, and pace" but did not present this limitation to the VE. See id., at 481. Instead of presenting all of the claimant's mental limitations to the VE, the ALJ's hypothetical only presented a portion of the mental limitations. The ALJ found he had "a poor to no ability to deal with the public; a limited to seriously limited ability to understand, remember and carry out detailed job instructions; and the need for simple routine, repetitive and low stress work tasks." Id., at 478.

Addressing the ALJ's failure to include all of the claimant's mental limitations, the Elswick Court stated:

The Court further finds the ALJ erred in not fully [informing] the vocational expert of Plaintiff's disabling limitations. It is well founded that a vocational expert's testimony must be in response to proper hypothetical questions that includes all limitations Plaintiff suffers from. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989). After a thorough review of the record, the Court agrees with Plaintiff and finds that the ALJ failed to ensure "that the vocational expert knew what the [Plaintiff's]

abilities and limitations were." Walker, 889 F.2d at 50. The ALJ found that Plaintiff "often has deficiencies of concentration, persistence, and pace." (Tr. 20) However, this finding was never presented to the vocational expert. Had it been, the vocational expert's opinion may have been different. ... In addition, the Court finds the testimony of the vocational expert to be irrelevant to Plaintiff's claim because it did not incorporate the fact that Plaintiff often suffers from deficiencies in concentration, persistence and pace nor did the ALJ define the term "often." Therefore, the Court further **ORDERS** the ALJ to include in a hypothetical his finding that Plaintiff suffers from deficiencies in concentration, persistence and pace...

Elswick v. Apfel, 109 F.Supp.2d 476, 481-482 (S.D.W.Va., 2000).

When an ALJ in the Seventh Circuit offered a hypothetical stating the claimant "could perform only 'simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public,'" the Court held that the ALJ's "hypothetical question was flawed in that it purported to tell the vocational expert what types of work [the claimant] could perform rather than setting forth [the claimant's] limitations and allowing the expert to conclude on his own what types of work [the claimant] could perform." Young v. Barnhart, 362 F.3d 995, 1004, FN4 (7th Cir. 2004).

In upholding the ALJ's Decision, the Magistrate dismisses the applicable authorities, stating,

Claimant's reliance on these cases is misplaced. These cases do not stand for the proposition that the ALJ has to detail Claimant's actual diagnoses to the VE instead of accommodating Claimant's impairments into categories of work. In the present case, the hypothetical directly tracks the RFC finding. It is the duty of the ALJ, and not the courts, to make findings of fact and to resolve conflicts in the evidence. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). (Doc. 24 at 8).

The Magistrate misunderstands Plaintiff's argument. Plaintiff has not argued that the ALJ was required to present actual diagnoses or impairments to the VE. Rather, the Plaintiff has

argued that the actual limitations resulting from the diagnoses and impairments must be relayed to the VE, and, here, the Plaintiff's reliance upon the cited cases is not misplaced. The fact that the hypothetical tracks the RFC is meaningless if the RFC does not accurately reflect the actual impairments and limitations suffered by the claimant. The issue before the Court is not who is to resolve conflicts in the evidence. Plaintiff argues that, once the ALJ decides which evidence he will rely on, he must present the limitations supported by such evidence to the VE. Here, the ALJ chose the opinion of examining psychologist Dr. Joseph over treating psychiatrist Dr. Powell, but the RFC and hypothetical to the VE did not contain any of the limitations discussed by Dr. Joseph.

While the Court recognizes that the ALJ has wide discretion to formulate the hypothetical questions to the VE, that discretion is not unlimited. The Court agrees with the reasoning offered by the Seventh Circuit in Young. As in Young, the hypothetical question in the case at bar told the VE that the claimant could work. In doing so, the hypothetical question made no mention of the limitations confirmed by Dr. Joseph, such as deficiencies of concentration, difficulties with supervisors, difficulties with co-workers or difficulties responding to work pressures in a usual work setting, among others. Also, the ALJ instructed the VE to assume an individual with a high school education despite the fact that Dr. Joseph's report clearly stated that Plaintiff's achievement scores were at the elementary school level. (Tr. 333, 267). The ALJ is simply not qualified to determine on his own that a claimant can perform "unskilled, low stress, entry-level work" given the mental limitations listed above.

In conclusion, the Court finds that the RFC finding and hypothetical question to the VE did not contain the mental limitations set forth in the very evidence the ALJ stated was supported by the record as required by law. Furthermore, the ALJ's RFC finding and hypothetical question

was not supported by substantial evidence. The Court does not attempt to determine whether the limitations contained in Dr. Joseph's opinion are disabling or not because such limitations were never presented to the VE. But for the Court's prior decision in part II of this Order, this issue would require remand to the Commissioner so that a proper hypothetical question containing all of Plaintiff's mental limitations could be presented to the VE.

## IV.     Dictionary Of Occupational Titles.

Plaintiff has argued that the VE testimony conflicted with the Dictionary of Occupational Titles and that the ALJ did not resolve said inconsistency pursuant to Social Security Ruling SSR 00-4P. Given the Court's decision regarding the residual functional capacity finding and hypothetical question; regarding Plaintiff's treating physician's opinion; and regarding the mental limitations and the residual functional capacity finding, the vocational expert testimony relied on by the ALJ was inherently flawed. The Court need not address Plaintiff's argument on this issue because such argument is now moot.


## V. CONCLUSION

For the above reasons, after making its required *de novo* review, pursuant to 28 U.S.C. § 636(b)(1)(C), this Court believes that it would not be appropriate to adopt the Report And Recommendation filed by Magistrate Judge Seibert in this case. (Doc. 21, 24). Rather, this Court finds that Plaintiff is disabled at step five of the sequential evaluation process based on the well-supported opinion of Plaintiff's treating psychiatrist and based on the associated vocational expert testimony. The Court remands this action to the Commissioner solely for the calculation of benefits. As such, the Defendant's Motion For Summary Judgment is hereby **DENIED**, and the Plaintiff's Motion For Summary Judgment is **GRANTED**. The Court Orders that this action is

22

hereby dismissed with prejudice and stricken from the active docket of the Court.

**IT IS SO ORDERED.**

The Clerk of the Court is directed to transmit copies of this Order to counsel of record herein.

ENTER: _September 19th_, 2007.

_____
United States District Judge